UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD AZCONA,<br><br>    Petitioner,<br><br>v.<br><br>PATRICK COVELLO,<br><br>    Respondent. | Case No. 22-cv-01317-JST<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK** |

Petitioner, an inmate at Mule Creek State Prison,[1] filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. The Court found the petition, ECF No. 1 ("Petition"), stated cognizable claims which merited an answer from Respondent. ECF No. 10. Respondent filed an answer on the merits, ECF No. 13 ("Ans."), and Petitioner filed a traverse, ECF No. 17 ("Traverse"). For the reasons set forth below, Court will deny the petition.

## I. BACKGROUND

On November 17, 2017, Petitioner was found guilty by a jury in Monterey County Superior Court ("trial court") of two counts of first-degree murder with special circumstances, two counts of attempted murder, one count of negligent discharge of a firearm, three counts of being a felon in illegal possession of a firearm, one count of assault with a deadly weapon, and one count of attempted second degree robbery. *See* Ans., Ex. A ("Clerk's Transcript") at 225-38. The jury also found firearm enhancements to be warranted. *See id*. at 327-43. Petitioner was sentenced to

---

[1] In accordance with Habeas Rule 2(a) and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to substitute Warden Patrick Covello as respondent because he is Petitioner's current custodian.

life in prison without possibility of parole, plus an additional sentence of 156 years and 4 months. *See id.* at 380-87.

On December 10, 2020, the California Court of Appeal ("state appellate court") reversed in part and affirmed in part the trial court's judgment, Ans., Ex. E; *see also People v. Azcona*, 58 Cal. App. 5th 504 (Cal. Ct. App. 2020), *as modified* (Jan. 11, 2021). Following the partial reversal, "only counts 4-6 and 10-11 remain[ed]." Ans. at 2 n.3. That is, Petitioner was convicted of two counts of first degree murder with special circumstances for the killings of Carlos Robles and Ramon Herrera; one count of attempted murder with an enhancement for personal use of a firearm and causing great bodily injury for the shooting of Moises Sanchez; and two counts of illegal possession of a firearm. *Compare id. with* Ans. at 1; *see also* Clerk's Tr. at 225-39 (Second Amended Information, pairing each victim with each count).

The California Supreme Court summarily denied a petition for review on February 24, 2021. Ans., Ex. G.

Petitioner filed the instant habeas petition on or before March 2, 2022. *See* Pet. at 1 (stating the Petition was received by the Court on that date).

## II. STATEMENT OF FACTS

The following facts are taken from the opinion of the state appellate court on direct appeal:

### I. BACKGROUND

> Over a one-month period in the late summer of 2015, defendant, seemingly at random, committed a series of shootings and related crimes in Salinas. On August 21, the first victim was shot in the arm as he sat on his front porch playing guitar. Defendant fired over a dozen shots while riding past on a bicycle. Some of the bullets struck a nearby house. Police recovered 13 nine-millimeter casings from the scene.
>
> About two weeks later, Carlos Robles was a passenger in a friend's car when defendant rode up to the driver's side on his bike, pulled out a gun, and started firing. When Robles jumped out and ran, defendant shot him multiple times. He died at the scene. His friend, the driver of the car, was shot in the hand and a bullet glanced off his head. The car was hit by eight bullets, and police found 15 nine-millimeter casings in the area.
>
> Two days later, someone matching defendant's description (Caucasian and blonde, wearing an orange sweatshirt, riding a bike) approached a car occupied by a man and his teenage son. The

> assailant brandished a gun and held it to the man's head, demanding to know if he claimed affiliation with any gang. The man put his head down and drove away, bracing for an impact that never came.
>
> A few days after that, defendant tried to rob a 16-year-old boy. He demanded "everything that [he had]," pulled out a gun and hit the boy with it on the side of the face. He left when a bystander took out a phone to call police. Defendant's final victim was Ramon Herrera, whose body was found that same night in the Chinatown area of Salinas, lying faceup in the middle of a road with nine bullet wounds. Herrera had died within minutes of being shot.
>
> Police officers investigating the crimes were familiar with defendant from prior contacts. Most of the surviving victims either identified defendant as the perpetrator in a photo lineup or provided a description consistent with his appearance, and surveillance videos placed defendant near the Chinatown murder scene around the time of the shooting. A firearms expert examined the collected bullet casings and concluded that casings from the first shooting and the shooting of the two victims in the car were fired from the same gun. A police informant reported defendant admitted killing both Carlos Robles and Ramon Herrera.
>
> The district attorney charged defendant with two counts of premeditated murder (Pen. Code, §§ 187, 190.2, subd. (a)(3)) with a firearm use enhancement (Pen. Code, § 12022.53, subds. (b)–(d)); two counts of attempted premeditated murder (Pen. Code §§ 187, 664) with an enhancement for using a firearm to cause great bodily injury (Pen. Code, § 12022.53, subd. (d)); three counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a) with a firearm use enhancement (Pen. Code § 12022.53, subd. (a)); four counts of being a felon in possession of a firearm (Pen. Code § 29800, subd. (a)(1)); one count of negligent discharge of a firearm (Pen. Code, § 246.3); and one count of attempted robbery (Pen. Code, §§ 211, 664). Further sentencing enhancements for a prior serious felony conviction (Pen. Code, § 667, subd. (a)(1)); prior strike (Pen. Code § 1170.12, subd. (c)(1)); and prior prison term (Pen. Code, § 667.5, subd. (b)) were also alleged.
>
> A jury convicted defendant of all charges, except for three counts on which it could not reach a verdict (the two counts of assault with a deadly weapon and one count of possessing a firearm as a felon, all stemming from the incident with the father and son victims). The jury also found true the special circumstance allegation that defendant committed multiple murders. In a bifurcated proceeding, the trial court found true defendant's prior conviction. Defendant was sentenced to life without parole, consecutive to a term of 156 years four months.

*Azcona*, 58 Cal. App. 5th at 508–09.

///

///

///

3

### III.  DISCUSSION

**A.    Legal Standard**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975).  The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  *Williams*, 529 U.S. at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that

4

the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.  The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Here, as noted above, the California Supreme Court summarily denied Petitioner's petition for review.  *See supra* at 2; Ans., Ex. G.  The California Court of Appeal, on direct review, addressed all the claims in the instant petition.  Ans., Ex. E.  The Court of Appeal thus was the highest court to have reviewed the claims in a reasoned decision, and it is that decision that this Court reviews herein.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

"On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (citation omitted).

**B**.    **Claims and Analysis**

Petitioner raises the following grounds for federal habeas relief:  (1) prosecutorial misconduct for making allegedly improper statements during closing argument which were prejudicial; and (2) ineffective assistance of counsel for failing to object to the prosecution's improper statements.  ECF No. 10 at 2 (finding these claims cognizable and citing Pet. at 6).

Respondent argues that Claim No. 1 was procedurally defaulted, and that Claim No. 2 fails on the merits because there was no misconduct warranting an objection from counsel.  The Court first addresses Respondent's procedural argument as to Claim No. 1.  Although the Court agrees that Claim No. 1 was procedurally defaulted, it will discuss the merits of Claim No. 1 because doing so is necessary to address Claim No. 2.

    **1.**      **Prosecutorial Misconduct Claim**

Respondent argues that Claim No. 1 was procedurally defaulted because Petitioner did not object in the trial court.  *See* Ans. at 11-12.  A review of the record reveals that Petitioner did, in

fact, fail to object at trial. *See generally*, Ans., Ex. B ("Reporter's Transcript"). The state appellate court found the failure to object dispositive of Claim No. 1. *See generally, Azcona*, 58 Cal. App. 5th at 515-17. Accordingly, these claims were procedurally defaulted.

### 1.     The state appellate court's findings

In Claim No. 1, Petitioner argues that the prosecutor used inappropriate hypotheticals, specifically the ideas of driving through a yellow light or buying a loaf of bread, to illustrate the concept of deliberation. *See* Pet. at 6, 8.

The state appellate court concluded that Petitioner's claim was both forfeited and meritless. *See Azcona*, 58 Cal. App. 5th at 515-17. The state appellate court discussed this claim as follows:

> C.  Prosecutorial Misconduct
>
> Defendant also contends the prosecutor mischaracterized the concept of premeditation during closing argument. Although the issue was forfeited for appeal because defense counsel did not object to the prosecutor's argument, we elect to address the merits, both because it is important to resolve allegations of prosecutorial misconduct and because it is judicially economical to do so here, given defendant's alternative contention of ineffective assistance of counsel based on the failure to object.
>
> It is considered misconduct to misstate the law to the jury, and bad faith is not required. (*People v. Centeno* (2014) 60 Cal.4th 659, 666, 180 Cal.Rptr.3d 649, 338 P.3d 938. But a prosecutor is allowed to vigorously argue the case and is afforded "significant leeway" in discussing the facts and the law in closing argument. (*People v. Centeno, supra*, at p. 666, 180 Cal.Rptr.3d 649, 338 P.3d 938; see *People v. Sandoval* (1992) 4 Cal.4th 155, 183 [14 Cal. Rptr. 2d 342, 841 P.2d 862]. Defendant asserts the prosecutor misstated the law by using two analogies to explain the concept of premeditation, which is relevant to the charges of premeditated murder and attempted premeditated murder. The prosecutor argued that the amount of time required for premeditation is no greater than that which would be required to decide whether to stop at a yellow light, or to decide which loaf of bread to buy at a store:
>
> "Everybody here has traveled into an intersection . . . where the light turns yellow. Okay? When you travel into that intersection and that light turns yellow and you're going to make a decision to go through that light, [. . . ] what are the two things you look for? Cars and cops. That's what you're going to look for. And then if you decide to go through, you've looked, you've thought about it. Are there cars? Are there cops? Happens to everybody. Common sense. [¶] So when you do that, you have deliberate[d], you thought about it before you've done it. What are the consequences? I could hit a car, a cop could catch me. You've deliberated it. And then when you went through the light, you premeditated before you went ahead and

> went through that light. You deliberated and premeditated it. It's as simple as that.
>
> Another example is if you're walking down the bread aisle . . . and maybe you forget your list and so you call the wife and say, hey, I forgot the bread, I forgot what kind of bread. Get some healthy bread, get some very healthy bread. So you look, look, look, boom, you grab. You've thought about it, you've contemplated it, you deliberated it, and you acted. It can happen as fast as that."
>
> Analogies in closing argument have provided fertile ground for reversal. *See*, e.g., *People v. Centeno, supra*, 60 Cal.4th at p. 667, 180 Cal.Rptr.3d 649, 338 P.3d 938 [addressing an analogy for reasonable doubt, noting that the "case law is replete with innovative but ill-fated" attempts to explain the standard, and discouraging the practice]. But we find no fault with the analogies used here. Indeed, the Supreme Court found nothing wrong with essentially the same yellow light analogy in *People v. Avila* (2009) 46 Cal.4th 680, 715, 94 Cal.Rptr.3d 699, 208 P.3d 634 (*Avila*)). Defendant contends the prosecutor's argument here trivialized the concept of premeditated murder compared to *Avila*, where the prosecutor expressly acknowledged that "'[d]eciding to and moving forward with the decision to kill'" was not the same, since it involves "'great dire consequences.'" (*Ibid.*)
>
> In assessing a claim that counsel misstated the law, we view the argument as a whole to determine whether it is reasonably likely the jury was misled. (*Avila, supra*, 46 Cal.4th at p. 714, 94 Cal.Rptr.3d 699, 208 P.3d 634. Viewing the prosecutor's two analogies in context, we see no suggestion that the decision to kill someone is no more consequential than deciding to drive through a yellow light or which loaf of bread to buy. Rather, the prosecutor's point was that the *time* required for premeditation is no greater than the time needed to make those other (far less consequential) decisions. And the prosecutor specifically called to the jury's attention the instruction regarding premeditation, which states that it is not the length of time spent considering whether to kill that matters but rather whether there was sufficient reflection and consideration of the consequences. (CALCRIM No. 521.) As the gist of the prosecutor's argument was consistent with that instruction, there was no likelihood of misleading the jury and no prosecutorial misconduct.

*Id.*

Thus, the state appellate court reached a particularized, record-based finding that petitioner failed to object as to Claim No. 1, and also determined that the claim failed on the merits.

### 2.     Procedural Default

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate

7

to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. *Id.* The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994). In cases in which a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Here, the state appellate court rejected Claim No. 1 because Petitioner did not make the necessary objection in the trial court. *See Azcona*, 58 Cal. App. 5th at 515. The Ninth Circuit has specifically held that failure to comply with the California contemporaneous objection rule results in a procedural default. *See Fairbank v. Ayers*, 650 F.3d 1243, 1256-57 (9th Cir. 2011); *Rich v. Calderon*, 187 F.3d 1064, 1069-70 (9th Cir. 1999). Moreover, the Ninth Circuit has applied California's contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999). Accordingly, Claim No. 1 was procedurally defaulted. *See Coleman*, 501 U.S. at 729-30.

There is an exception to procedural default that applies when a petitioner shows "cause" for the failure to comply with the state procedural rule and "prejudice" arising from the default, or that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish a "fundamental miscarriage of justice," a petitioner must demonstrate "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Wood v. Ryan*, 693 F.3d 1104, 1117-18 (9th Cir. 2012) (internal

8

1    quotation omitted).  A claim of actual innocence is rarely met and must be based on reliable

2    evidence not presented at trial.  *Casey v. Moore*, 386 F.3d 896, 921 n.27 (9th Cir. 2004).

3            The Ninth Circuit has recognized that the petitioner bears the burden of establishing cause

4    and prejudice, or a fundamental miscarriage of justice.  *See Madrid v. Gregoire*, 187 F.3d 648 (9th

5    Cir. 1999) (finding petitioner had not borne his burden of establishing cause); *Woolery v. Arave*, 8

6    F.3d 1325, 1331 (9th Cir. 1993) ("the burden of showing 'cause and prejudice' is on

7    the petitioner"); *Blumberg v. Cal. Med. Facility*, 967 F.2d 584 (9th Cir. 1992) ("The burden is on

8    the petitioner to show cause and prejudice.").

9            Here, Petitioner argued that he defaulted Claim No. 1 due to ineffective assistance of

10   counsel.[2]  *See* Pet. at 6, 8.  To establish good cause on the ground of ineffective assistance of

11   counsel, a petitioner must show that (1) counsel made errors so serious that counsel was not

12   functioning as the counsel guaranteed the defendant by the Sixth Amendment, and (2) the

13   deficient performance prejudiced the defense.  *Loveland v. Hatcher*, 231 F.3d 640, 644 (9th Cir.

14   2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  Were Petitioner's

15   ineffective assistance claim to have merit, it could excuse his procedural default.  However, as

16   explained below, Petitioner's trial counsel did not render ineffective assistance, and so Claim No.

17   1 remains procedurally defaulted.

### 3. Merits

19           A defendant's due process rights are violated when a prosecutor's misconduct renders a

20   trial "fundamentally unfair."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Under *Darden*,

21   the first issue is whether the prosecutor's remarks were improper; if so, the next question is

22   whether such conduct infected the trial with unfairness.  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th

23   Cir. 2005); *see also Deck v. Jenkins*, 768 F.3d 1015, 1023 (9th Cir. 2014) (recognizing that

24   *Darden* is clearly established federal law regarding prosecutor's improper comments for AEDPA

25   review purposes).  A prosecutorial misconduct claim is decided "on the merits, examining the

26   entire proceedings to determine whether the prosecutor's remarks so infected the trial with

---

[2] Petitioner did not argue that he suffered a miscarriage of justice and the Court does not analyze the issue further.

unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted); *see Trillo v. Biter*, 769 F.3d 995, 1001 (9th Cir. 2014) ("Our aim is not to punish society for the misdeeds of the prosecutor; rather, our goal is to ensure that the petitioner received a fair trial."). Even if there was misconduct, a habeas petitioner is not entitled to relief unless the misconduct "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." *Id.* (citation omitted); *see e.g.*, *Johnson*, 63 F.3d at 930 (finding prosecutorial vouching "could not have had substantial impact on the verdict necessary to establish reversible constitutional error" under *Brecht*).

Here, a review of the record reveals that the challenged statements were not misconduct.

Petitioner first challenges the prosecutor's comparison of Petitioner's deliberation and premeditation to that required to decide whether to drive through a yellow light, contending that the decision to commit murder is far more complicated. *See* Pet. at 6, 8. Read in context, the prosecutor's analogy does not suggest that the decision to commit murder is simple. Rather, the prosecutor used the example of driving through a yellow light to illustrate that a person can consider the issues necessary to arrive at a decision in a relatively brief period of time before making that decision. *See* Ans., Ex. B at 1857:1-19. Indeed, the preface to the yellow-light example makes clear the example was designed to show that a complicated decision could be made in a short period of time, rather than to minimize the significance of the premeditation and deliberation necessary to commit murder: "[The l]ength of time person spends considering does not alone determine whether the killing was deliberate, premeditated. The length of time is not that critical. The test is the extent of the reflection, not the length of time." (*Id*. at 1856:24-28. This example, used for this purpose, has been upheld by the California Supreme Court and by multiple federal district courts. *See People v. Avila*, 46 Cal. 4th 680, 715 (2009); *see also, e.g.*, *Jennings v. Santoro*, No. EDCV 15-1185-GW (KS), 2016 WL 8608479, at *22–*23 (C.D. Cal. Nov. 23, 2016), *report and recommendation adopted sub nom. Jennings v. Stanoro*, No. EDCV

15-1185-GW(KS), 2017 WL 1138122 (C.D. Cal. Mar. 27, 2017), *cert. of appealability denied sub nom. Jennings v. Spearman*, No. 17-55799, 2018 WL 2734891, at *1 (9th Cir. Feb. 23, 2018) (denying certificate of appealability "because appellant has not made a 'substantial showing of the denial of a constitutional right'"). Likewise, the prosecutor's example of a grocery store purchase has been upheld when it was given to illustrate that a decision could be made quickly. *See Montgomery v. Matteson*, No. 5:21-CV-00501-FWS-AFM, 2022 WL 16556042, at *14 (C.D. Cal. Sept. 14, 2022) (finding an example in which a shopper purchased a jar of pickles did not violate due process), *report and recommendation adopted,* No. 5:21-CV-00501-FWS-AFM, 2022 WL 16556011 (C.D. Cal. Oct. 31, 2022).

The state appellate court held that the prosecutor's analogies did not constitute misconduct, because under California law deliberation and premeditation do not require any particular length of time. This Court cannot second-guess the state court's determination conclusion as to what California law does or does not say regarding deliberation and premeditation. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (per *curiam)* ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citations omitted); *Hicks on behalf of Feiock v. Feiock,* 485 U.S. 624, 629–30 (1988) ("We are not at liberty to depart from the state appellate court's resolution of these issues of state law. Although Petitioner marshals a number of sources in support of the contention that the state appellate court misapplied state law on these two points, the California Supreme Court denied review of this case, and we are not free in this situation to overturn the state court's conclusions of state law.") (footnote omitted). Moreover, based on this Court's review of California cases, the state appellate court appears accurately to have summarized California law. *See, e.g., People v. Koontz*, 27 Cal. 4th 1041, 1080 (2002) ("The process of premeditation and deliberation does not require any extended period of time. The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly."). The prosecutor therefore did not misstate the law by using everyday examples to demonstrate that decisions may be made in a brief period.

Moreover, even if the prosecutor's analogies had been improper—which they were not—Petitioner was not prejudiced. The jury heard evidence that, before shooting Moises Sanchez (the driver of the car containing Carlos Robles), Petitioner was passed by a car; the car pulled over to let out another passenger; the car pulled into a driveway to make a U-turn; and the car backed up as part of that U-turn. *See* Rep.'s Tr. at 1291:28-1293:13. Petitioner then shot Moises Sanchez twice. *See id.* Moises Sanchez then attempted to get away but lost control of the vehicle; he stopped the car and changed gear from reverse to drive; Carlos Robles got out of the car and asked Petitioner not to shoot; and Petitioner shot Carlos Robles between five and seven times. *See id*. at 1293:19-1297:18. Similarly, the jury heard evidence that, before shooting Ramon Herrera, Petitioner obtained a gun, traveled from San Jose to Salinas by bus, he entered a cab and traveled for a further ten minutes to reach Ramon Herrera, and then shot Ramon Herrera nine times with a gun that required nine separate pulls of the trigger. *See* Rep.'s Tr. at 1861:7-10, 1862:10-17, 1863:1-11, 1865:19-28, 1867:17-20, 1868:18-23. California courts have repeatedly upheld finding of premeditation on facts similar to or weaker than those presented here. *See, e.g., People v. Henderson*, 46 Cal. App. 5th 533, 551 (2020) (defendants were armed, asked the victim where he was from and whether he was a gang member, and shot him). In short, there was ample evidence on which the jury could have concluded that Petitioner shot his victims after premeditation and deliberation.

Because Petitioner's claim of prosecutorial misconduct was procedurally defaulted, and in any event is without merit, the state appellate court's rejection of this claim was neither unreasonable nor contrary to clearly established federal law. Petitioner is not entitled to relief on his prosecutorial misconduct claim.

**2.     Ineffective Assistance Claim**

Respondent argues that Claim No. 2 fails because trial counsel did not render ineffective assistance. *See* Ans. at 18. The Court agrees that Petitioner's ineffective assistance claim is without merit.

To prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it

12

fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *Id.* at 697.

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Cullen v. Pinholster*, 563 U.S. 170, 189-90 (2011); *Premo v. Moore*, 562 U.S. 115, 122-23 (2011) (same). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When Section 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Under a "doubly" deferential judicial review, the state appellate court did not unreasonably apply *Strickland* in rejecting Petitioner's argument. *See id.*; *see also Pinholster*, 563 U.S. at 189-90. As noted, *supra*, the state appellate court concluded that the prosecutor had not engaged in misconduct by posing two examples to the jury, because those examples accurately portrayed California law. Because any objection by counsel would have been meritless, counsel did not give an incompetent performance in the trial court. Moreover, as explained above, there was ample evidence from which the jury could have concluded that the shootings followed premeditation and deliberation by Petitioner. Thus, even if the failure to object had been incompetent – which it was not – Petitioner was not prejudiced by counsel's decision.

For these reasons, the state appellate court's rejection of this claim was not unreasonable. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Accordingly, Petitioner is not entitled to relief on his ineffective assistance claim.

/ / /

## IV.  CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be denied.

Further, a Certificate of Appealability is denied.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

In accordance with Habeas Rule 2(a) and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to substitute Warden Patrick Covello as respondent because he is Petitioner's current custodian.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

Dated:  February 9, 2024



JON S. TIGAR
United States District Judge